**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

TANGARA, Oumar,

Petitioner,

v.

FRANCIS, LaDeon,
in his official capacity as Acting Field Office Director, New York Fiel Office, U.S. Immigration and Customs Enforcement,

Respondent.

Case No. 26-cv-6056

**PETITION FOR**
**WRIT OF HABEAS CORPUS**

Petitioner Oumar Tangara ("Mr. Tangara") respectfully seeks issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner alleges in support of his petition:

## INTRODUCTION

1. U.S. Department of Homeland Security ("DHS") officials detained Mr. Tangara on or about March 2, 2026, following an immigration court appearance. Mr. Tangara had fled his native Mali and sought refuge in the United States. He appeared in immigration court to try and obtain that relief. Mr. Tangara had previously been released from DHS's custody and had an order for release on recognizance at the time of his March 2, 2026 court appearance.

2. DHS violated the Immigration and Nationality Act ("INA") and by misclassifying Mr. Tangara as someone subject to mandatory detention. The U.S. Court of Appeals for the Second Circuit confirmed that DHS wrongly applied the statutes over one month later in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). DHS also violated Mr. Tangara's due process

rights by not performing an individualized assessment of any risks Mr. Tangara may pose prior to his re-detention. Mr. Tangara merits release for these violations.

3. DHS also failed to follow its own regulations regarding courthouse arrests when it arrested Mr. Tangara at the immigration courthouse. At the time of the arrest, DHS was subject to this Court's order barring the agency from applying its new courthouse arrest policy. *See Afr. Communities Together v. Lyons*, 799 F. Supp. 3d 362, 396–97 (S.D.N.Y. 2025). DHS's failure to consider restrictive criteria for executing Mr. Tangara's arrest further militates for his release.

4. Due to the exigency of Respondent's potential attempt to remove Mr. Tangara, Mr. Tangara also respectfully requests this Court to restrain or enjoin Respondent from transferring him outside of this District, including from removing him from the United States, during the pendency of this action. *See Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc*., 965 F.2d 1224, 1237 (2d Cir. 1992) ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction" (cleaned up)); *see also, e.g.*, Order to Show Cause, *Normatov v. Francis*, No. 26-cv-132 (E.D.N.Y. Jan. 8, 2026), ECF No. 12 (ordering Respondents not to transfer the noncitizen outside of the Eastern District of New York, Southern District of New York, or the District of New Jersey) (citing, *inter alia*, *Ozturk v. Trump*, No. 25-cv-374, 2025 WL 1145250, at *15 (D. Vt. Apr. 18, 2025)).

## PARTIES

5. Petitioner Oumar Tangara is a native of Mali. He appeared for an immigration court hearing on March 2, 2026. DHS officers detained him following that hearing and have held him in detention since. It revoked Mr. Tangara's Order of Release on Recognizance in that

process. Respondent currently holds Mr. Tangara at the NYC Hold Room at 26 Federal Plaza, New York, NY 10278.

6. Respondent LaDeon Francis is sued in his official capacity as the Acting Field Office Director of U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations' New York Field Office. He is responsible for the administration and management of ICE Enforcement Removal Operations in New York. He is Petitioner's immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

**JURISDICTION AND VENUE**

7. This Court has jurisdiction pursuant to Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (mandamus), and 28 U.S.C. § 2241 (federal habeas corpus).

8. This Court may grant equitable relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.* and the All Writs Act, 28 U.S.C. § 1651; and the mandamus statutes, 28 U.S.C. § 1361. It may further grant injunctive relief under the Administrative Procedures Act, 5 U.S.C. § 706; and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

9. Venue is proper in this District because Petitioner is detained at 26 Federal Plaza, New York, NY 10278, which is located within this District. 28 U.S.C. § 1391; *Rumsfeld*, 542 U.S. at 442.

**STATEMENT OF FACTS**

10. DHS detained Mr. Tangara on or about March 2, 2026, following an immigration court hearing at 26 Federal Plaza, New York, NY 10278. The agency currently holds him at that location. *See* Ex. A, U.S. Immigr. & Customs Enf't, *Online Detainee Locator System*, https://locator.ice.gov/odls/#/search (last accessed July 17, 2026).

**DHS's Changing Interpretation of the Immigration Detention Statutes**

11. In 2025, DHS reinterpreted the immigration detention statutes at 8 U.S.C. §§ 1225 and 1226, and determined that all noncitizens who have not yet been "admitted," 8 U.S.C. § 1101(a)(13)(A), into the United States are subject to mandatory detention. The Executive Office of Immigration Review authorized this view in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

12. The U.S. Court of Appeals for the Second Circuit rejected this interpretation in *Barbosa da Cunha*, finding that only noncitizens who are actively "requesting . . . lawful entry into the United States" are subject to mandatory detention. 175 F.4th at 74. Judges in this District had largely agreed with that interpretation, granting writs of habeas corpus and ordering the release of noncitizens who DHS detained under its errant view of the statutes. *See, e.g.*, *Tumba Huamani v. Francis*, 813 F. Supp. 3d 394, 406 (S.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 498 (S.D.N.Y. 2025). They have explained that because DHS "must make a discretionary determination" as to a noncitizen's "risk of flight or danger to the community" prior to detention, the agency's wholesale detention of individuals for whom it has not conducted an individualized determination violates due process. *See Tumba Huamani*, 813 F. Supp. 3d at 404–05.

13. Judges in this District have similarly found that DHS must follow regulations and perform some individualized assessment of a noncitizen's particular risks prior to revoking their authorization for release—*e.g.*, order of release on recognizance, order of supervision, or others. *See, e.g.*, *id.* at 404; *Lopez Benitez*, 795 F. Supp. 3d at 494–95; *E.M.M. v. Almodovar*, No. 25-cv-8212, 2025 WL 3077995, at *5–6 (S.D.N.Y. Nov. 4, 2025).

**DHS's Courthouse Arrest Policy**

14. In January 2025, DHS rescinded prior policy that restricted civil immigration enforcement actions around courthouses. *See Afr. Communities Together v. Lyons*, --- F. Supp. --

-, 2026 WL 1382944, at *5 (S.D.N.Y. May 18, 2026). Whereas before, DHS permitted courthouse arrests only under tailored circumstances, the 2025 revision "declared that ICE officers or agents may conduct civil immigration enforcement actions in or near courthouses." *Id.* (internal citation and quotation marks omitted). The new policy meant DHS officers could more "broadly" carry out arrests in and outside courthouses, particularly immigration courts. *Id.*

15. This Court stayed DHS's courthouse arrest policy as arbitrary and capricious agency action. It first did so on September 12, 2025. *See Afr. Communities Together*, 799 F. Supp. 3d at 396–97. It then reexamined and reinforced that stay on May 18, 2026, restricting DHS from applying its 2025 courthouse arrest policy at New York courts, including 26 Federal Plaza. *See Afr. Communities Together*, 2026 WL 1382944, at *8.

16. This Court's stay means DHS may only apply its past policy, which "permitted arrests in courthouses but restricted the circumstances under which such arrests could take place." *Id.* at 5. DHS is required to comply with pre-set criteria evaluating those limited circumstances before it can conduct a courthouse arrest.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **Violation of the Immigration and Nationality Act**
### **Unlawful Application of Immigration Detention Statutes**

17. Petitioner re-alleges and incorporates by reference the above paragraphs.

18. DHS released Mr. Tangara into the U.S.-interior under an order of recognizance prior to his attendance at the March 2, 2026 immigration court hearing. At the time of that hearing, Mr. Tangara was not "seeking admission," 8 U.S.C. § 1225(b)(2)(A). The Second Circuit confirmed that understanding one-and-a-half months later in *Barbosa da Cunha*, 175 F.4th at 74.

19. Respondent's treatment of Mr. Tangara as a noncitizen "seeking admission" and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), was *ultra vires* of the Immigration and Nationality Act. Because DHS never conducted an individualized assessment of Mr. Tangara's risks of flight or danger prior to its revocation of his order of release on recognizance and detention of him at the March 2, 2026 hearing, he merits release. *See, e.g.*, *Tumba Huamani*, 813 F. Supp. 3d at 404.

## COUNT II

**Violation of Fifth Amendment Due Process Clause**
**Insufficient Procedures to Protect a Strong Liberty Interests**

20. Petitioner re-alleges and incorporates by reference the above paragraphs.

21. The government violates a person's due process rights if it deprives their liberty interests without providing adequate procedural protections. Courts apply the *Mathews* balancing test to determine what procedural protections the Due Process Clause requires. *See, e.g.*, *Black v. Decker*, 103 F.4th 133, 145–46 (2d Cir. 2024). All three factors weigh in Mr. Tangara's favor.

22. Mr. Tangara's private interest is "the most significant liberty interest there is—the interest in being free from imprisonment." *Lopez Benitez*, 795 F. Supp. 3d at 492 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). DHS's blanket detention of all noncitizens, including Mr. Tangara, who have not yet been "admitted," 8 U.S.C. § 1101(a)(13)(A), into the country creates a high risk of an erroneous deprivation because it causes the detention of those who pose no risks of flight or danger, *see Lopez Benitez*, 795 F. Supp. 3d at 495. When DHS first released Mr. Tangara from custody, "it could not have done so validly unless it did not consider him to be a flight risk or danger to the community." *Id.* Its re-detention of Mr. Tangara without evaluating those risks improperly deprives Mr. Tangara of his liberty. The government

correspondingly lacks any interest in detaining someone like Mr. Tangara who they cannot show to be a flight or danger risk. *See id.* at 495–96.

23. Respondent's re-detention of Mr. Tangara at the March 2, 2026 immigration court hearing violates his due process rights.

## COUNT III

**Violation of Administrative Procedure Act**
**Failure to Follow Proper Guidance for Carrying Out Courthouse Arrests**

24. Petitioner re-alleges and incorporates by reference the above paragraphs.

25. DHS arrested Mr. Tangara at the 26 Federal Plaza immigration courthouse on March 2, 2026. By that time, DHS was subject to a court order preventing it from conducting courthouse arrests under its new 2025 guidance. *See Afr. Communities Together*, 799 F. Supp. 3d at 396–97. DHS was instead only permitted to apply past guidance, which required the agency to conduct limited courthouse arrests subject to limited circumstances. *See Afr. Communities Together*, 2026 WL 1382944, at *5.

26. DHS did not follow its limited, past guidance when it detained Mr. Tangara on March 2, 2026. Its failure to do so violates its own policy. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954) (requiring agencies to follow their own rules and regulations).

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a) Assume jurisdiction over this matter;

b) Issue an order administratively staying Respondent from transferring Petitioner outside of this Court's geographic jurisdiction pending the Court's adjudication of the petition;

c) Declare that Petitioner's continued detention violates the Immigration and Nationality Act, the Administrative Procedure Act, and/or the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

d) Issue a Writ of Habeas Corpus and order Petitioner's immediate release from custody;

e) Award Petitioner his costs and reasonable attorney fees in this action as provided for by the Equal Access to Justice Act, as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

f) Grant such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ John Peng*

John Peng (NY 5751680)
JOHN PENG CONSULTING, LLC
1322 15th St. NW #1
Washington, DC 20005
T: (516) 712-7608
E: johnhcpeng@gmail.com

*Jonah Eaton (NY 6323760)
UNLOCAL, INC.
45 W. 29th St. Suite 203
T: (917) 217 2023
E: jonah@unlocal.org

*Pro Bono Counsel for Petitioner*

** Application for Admission Forthcoming*

DATED: July 17, 2026
Washington, D.C.